ELIZABETH L. CROOKE, SBN 90305
bcrooke@elllaw.com
MARK E. MILLARD, SBN 175169
mmillard@elllaw.com
**ENGSTROM, LIPSCOMB & LACK**
10100 Santa Monica Blvd., 12th Floor
Los Angeles, CA  90067-4113
Tel: 310-552-3800; Fax: 310-552-9434

Plaintiffs' Liaison Counsel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re: AIR CRASH AT MADRID, SPAIN, ON AUGUST 20, 2008** | **MDL Case No. 2:10-ml-2135-GAF (RZx)** |
| | **THIS DOCUMENT RELATES TO: ALL CASES** |
| | Hon. Gary A. Feess |
| | **PLAINTIFFS' SUBMISSION OF NEW AUTHORITY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (*FORUM NON CONVENIENS*)** |
| | DATE:          February 7, 2010<br>TIME:           9:30 a.m.<br>LOCATION:   Courtroom 740 |

Plaintiffs submit the following new authority, which was entered on January 26, 2011, in support of their opposition to Defendants' Motion to Dismiss (*Forum Non Conveniens*):

**PLAINTIFFS' SUBMISSION OF NEW AUTHORITY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (*FORUM NON CONVENIENS*)**

1    *Oscar Gararado Posadas Garcia, an individual, et. al. v. Bell Helicopter Textron,*

2    *Inc.*, Case No. 08-19559 CA 08, Circuit Court of the 11th Judicial Circuit in and for

3    Miami-Dade County, Florida, issued January 26, 2011 (attached hereto as Exhibit "A").

4         The Circuit Court in and for Miami-Dade County, Florida, issued this Order,

5    which supports Plaintiffs' argument that this action should not be dismissed to the

6    Spanish forum, after the parties submitted their moving papers.

7

8    DATED:  February 3, 2011          **ENGSTROM, LIPSCOMB & LACK**

9

10                                          */s/ Elizabeth L. Crooke*
                                     By: _____
11                                        ELIZABETH L. CROOKE
                                          Plaintiffs' Liaison Counsel
12
                                     Michael Gallagher
13                                   **THE GALLAGHER LAW FIRM**

14                                   David P. Matthews
                                     Adam Funk
15                                   **MATTHEW & ASSOCIATES**

16                                   Ricardo M. Martinez-Cid
                                     Steven C. Marks
17                                   **PODHURST ORSECK, P.A.**

18
                                     Lewis "Mike" Eidson
19                                   Enid Duany Mendoza
                                     Curtis Miner
20                                   **COLSON HICKS EIDSON**

21
                                     Michael P. Verna
22                                   **BOWLES & VERNA LLP**

23

24

25

26

27

28
                                          2

Arturo Gonzalez
**BRENT COON & ASSOCIATES**

Danny M. Sheena
**DANNY M. SHEENA, P.E.**

Michael Olin
**MICHAEL OLIN, P.A.**

Newton B. Schwartz
James Stegall
Kelly W. Kelly
**LAW OFFICES OF
NEWTON B. SCHWARTZ, SR.**

Floyd A. Wisner
**WISNER LAW FIRM, P.C.**

**Attorneys for Plaintiffs**

**PLAINTIFFS' SUBMISSION OF NEW AUTHORITY IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (*FORUM NON CONVENIENS*)**

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

OSCAR GARARDO POSADAS GARCIA, an
individual; and ALMA MEDINA GALLEGO,
an individual,

GENERAL JURISDICTION DIVISION

Case No. 08-19559 CA 08

                    Plaintiffs,

vs.

Consolidated for all Pretrial Proceedings
Case No. 08-19562 CA 08
Case No. 08-19870 CA 08

BELL HELICOPTER TEXTRON, INC., a
foreign corporation; BELL HELICOPTER
TEXTRON CANADA, LTD., a foreign
corporation; ROLLS-ROYCE CORP., INC.
f/k/a ALLISON ENGINE COMPANY, INC., a
foreign corporation; SIMMONDS ENGINE
PRECISION PRODUCTS, INC., a foreign
corporation, d/b/a B.F. GOODRICH ENGINE
ELECTRICAL SYSTEMS DIVISION;
CHANDLER EVANS CONTROL SYSTEMS,
INC., a foreign corporation, n/k/a GOODRICH
PUMP & ENGINE CONTROL SYSTEMS,
INC., a division of Goodrich Corporation,

                    Defendants.
_____/

### ORDER DENYING DEFENDANTS ROLLS-ROYCE CORP., INC., BELL HELICOPTER TEXTRON, INC., SIMMONDS PRECISION ENGINE SYSTEMS, INC., AND GOODRICH PUMP & ENGINE CONTROL SYSTEMS, INC.'S MOTION TO DISMISS BASED UPON FORUM NON CONVENIENS

**THIS MATTER** is before the Court upon Defendants Rolls-Royce Corp., Inc. ("Rolls-Royce"), Bell Helicopter Textron, Inc. ("Bell"), Simmonds Precision Engine Systems, Inc. ("Simmonds"), and Goodrich Pump & Engine Control Systems, Inc.'s ("GPECS") Motion to Dismiss Based Upon Forum Non Conveniens, filed June 20, 2008.

### I.   INTRODUCTION

Plaintiffs, residents of Mexico, filed complaints against four U.S.-based and one Canadian-based Defendants arising out of a April 11, 2006 crash of a Bell Helicopter Model 407, registration

XC-UPN, Serial No. 53425 (the "subject helicopter"). The Plaintiffs are the pilot of the subject aircraft, Oscar Gerardo Posadas Garcia, and passengers Jesus Alberto Juarez Carbajal and Jorge Antonio Carbajal Mora.[1] The subject helicopter was equipped with a Rolls-Royce 250-C47B engine, Serial No. CAE 847462 (the "subject engine"). The aircraft was also equipped with a FADEC system (an acronym for Full Authority Digital Engine Control), which is a system that, among other things, controls fuel flow. The FADEC consists of three components: a digital electronic control unit (ECU), a hydromechanical metering unit (HMU) and a set of electrical harnesses that connect the ECU and HMU to the engine and airframe sensors. Plaintiffs brought the instant action against Bell, Rolls-Royce, Simmonds and GPECS as the designers and manufacturers of the subject helicopter, the subject engine, the FADEC system and various sub-component parts thereto.

The cases were consolidated and Defendants filed motions to dismiss on forum non conveniens grounds in each case, arguing that the cases should be dismissed in favor of Mexico. Defendants seek dismissal of this action only to Mexico – not to Texas or Canada where the helicopter was designed and manufactured; not to Indiana where the engine was designed and manufactured; and not to Connecticut where the FADEC system and its associated component parts were designed and manufactured. Since Defendants do not seek an action in any other state, the issue before the Court is only whether Mexico is a more convenient forum than Florida.

## II.   FACTUAL BACKGROUND

As stated above, on April 11, 2006, the subject helicopter crashed in Mexico. The subject helicopter was being utilized for purposes of an emergency medical service flight at the time of the accident, and was owned and operated by the government of a Mexican state. Plaintiffs allege that the crash was caused when the subject helicopter's FADEC system suddenly and unexpectedly

---

[1] The wives of the pilot and the passenger Jesus Alberto Juarez Carbajal also asserted claims for loss of consortium.

2

failed. Although the crash took place in a foreign territory, Plaintiffs' product liability claims arise
from the design and manufacture of the subject helicopter in the United States.

### A.    The Subject Helicopter

Bell has conceded, through the affidavit of Jack Suttle (Bell's Principal Air Safety
Investigator) submitted in support of its Motion to Dismiss and its answers to discovery, that it
manufactured the subject helicopter. Bell is a Delaware corporation with its principal place of
business in Hurst, Texas. The rotor and propulsion systems of the subject helicopter were designed
in Texas, and additional parts and systems were designed in Mirabel, Quebec, Canada. The subject
helicopter was manufactured and assembled in Mirabel, Quebec, Canada.

Bell also concedes that Bell employees with knowledge about the design, manufacture, safe
operation and proper maintenance of the Bell 407 helicopter, and incorporated FADEC system, and
documents related to the helicopter, are located in Texas and Canada. The documents regarding
these issues are also kept in these locations. Bell employees with knowledge of the research, testing,
inspection, engineering and/or certification of the subject helicopter, including the FADEC system,
and any revisions or proposals for the improvement of the design and/or engineering of the FADEC
system are located in Texas and Canada. All Bell documents which may be relevant to the subject
case are located in Ft. Worth, Texas and Canada.

### B.    The Subject Engine

Rolls-Royce has conceded, through the affidavit of J. Thompson Thornton (Rolls-Royce's
attorney in this case) submitted in support of its Motion to Dismiss, its answers to discovery and
depositions, that it is a Delaware corporation with its principal place of business in Indianapolis,
Indiana. Thomas Sain, Rolls-Royce Senior Airworthiness Specialist, testified at his deposition[2] that
the only facility Rolls-Royce has is the one in Indianapolis. He also testified that Rolls-Royce has

---

[2] All depositions referenced by the Court in this Order were filed by Plaintiffs in support of their
Response in Opposition to Defendants' Motion to Dismiss for Forum Non Conveniens and are part
of the record.

3

no customer service representatives in Mexico. Rolls-Royce customer service representatives responsible for Mexico are stationed in the United States.

Mr. Sain further testified that the subject engine was manufactured by Rolls-Royce in Indianapolis; that Rolls-Royce performed quality assurance and acceptance testing on the subject engine in Indiana before it left Rolls-Royce headquarters; and that "[t]here is an assembly record of all parts that went into the engine when it left [Rolls-Royce in Indiana]." Sain stated that those records would list the FADEC part number and serial number that would have been tested with the engine before it left Indiana and was sent to Bell. The results of the tests performed by Rolls-Royce on the engine and its component parts are kept in Indiana. Mr. Sain testified that in order to obtain these records, Rolls-Royce would contact the production quality employees in Indiana who maintain all of Rolls-Royce's production records.

In response to the Plaintiffs' discovery requests, Rolls-Royce conceded that any person with knowledge of the manufacture, testing, inspection, certification, research, design, development, and engineering of the subject aircraft, including the FADEC system, are located in the U.S. or Canada. Mr. Sain testified that "[a]ll of the records concerning engines that have been manufactured by the Indianapolis facility, Rolls-Royce Corporation and its predecessor company are stored in Indianapolis," and that "all manufacturing records" for the subject engine, in particular, are kept in Indianapolis.

### C.   The FADEC System and Associated Component Parts

The ECU and HMU components of the FADEC system were manufactured and designed by GPECS, a Delaware corporation with its principal place of business in West Hartford, Connecticut. The electrical harnesses that connect the ECU and HMU to the engine and airframe sensors were manufactured and designed by Simmonds, also a Delaware corporation with its principal place of business in West Hartford, Connecticut. Dennis McBrine, GPECS Senior Systems Engineer, testified at his deposition that, with the exception of a small facility in Montreal, Canada, GPECS

4

does not maintain any offices or facilities outside of Connecticut. McBrine further testified that the
Canadian facility has no responsibility for any of the FADEC components installed on the Bell 407
helicopter, the model of the subject helicopter.

In response to the Plaintiffs' discovery requests, GPECS conceded that it designed,
manufactured, assembled and tested the HMU and ECU component parts of the FADEC system in
the United States. McBrine also testified that all design data, testing and certification information
pertaining to the HMU and ECU is kept in the United States; that all quality assurance data for these
units is kept in the United States; and that all maintenance documentation, product support and
warranty claims information on the HMU and ECU is located in the United States.

D.     **Evidence of the Crash is Partly in the United States**

This accident occurred in Mexico. The Mexican Civil Aviation Authority, Direccion General
de Aeronautica Civil ("DGAC"), conducted an investigation of the accident, and it is likely that the
DGAC will issue a final report at the end of its investigation. However, evidence of the crash came
to the United States as a result of the participation of the American-based Defendants in the
investigation initiated by DGAC. The following describes the Defendants' involvement in the
investigation of the subject accident.

Mark Stuntzner, a Bell Helicopter accident investigator, testified at his deposition that in
response to the accident, DGAC requested the assistance of Bell in investigating the accident. Mr.
Stuntzner traveled from the U.S. to Mexico to assist in the investigation. Additional Bell employees,
Roy Fox and Jack Suttle, also assisted DGAC with the investigation of the subject accident and these
employees, along with Mr. Stuntzner, are located in Fort Worth, Texas. Bell conducted its own
investigation into the subject accident and created an Accident Investigation Record. This Record
was created in English. Mr. Stuntzner testified that he drafted the factual observations related to
Bell's investigation; that these observations were written in English; and that the observations are
kept in Fort Worth, Texas. Mr. Stuntzner further stated that all documentation regarding Bell's

5

investigation into the subject accident, including all correspondence related to the subject accident and investigation, is kept at his office in Texas. Mr. Stuntzner also keeps all records of prior Bell 407 accidents he has investigated at his office in Texas.

The DGAC also requested Rolls-Royce's assistance in the investigation. Rolls-Royce employee, Bob Ketchum, traveled from the U.S. to Mexico to aid in the accident investigation. Mr. Sain testified that Rolls-Royce shipped the subject engine to its headquarters in the U.S. where it performed further testing and inspection. In Indianapolis, Rolls-Royce performed a comprehensive test cell run in order to verify engine power output and also created an accident report which was drafted in English and is stored permanently in Indiana. Mr. Sain testified at his deposition that he was "sure someone here in Indianapolis has an opinion" of what caused the FADEC to switch to manual mode during flight.

GPECS did not send a representative to Mexico to assist the DGAC with the investigation. However, the ECU and HMU components were shipped to GPECS' headquarters in the U.S. where GPECS analyzed and examined the units in its laboratory. Mr. Stuntzner testified at his deposition that "[a]pproximately, half a dozen" GPECS personnel attended the two to three day examination at GPECS headquarters in Connecticut. Mr. McBrine testified that during the examination, GPECS "downloaded the data [from] the non-volatile memory" of the ECU using two software utilities maintained at their West Hartford, Connecticut facility and took photographs of the components. Mr. McBrine also stated that GPECS performed testing on its closed-loop bench, which "is an engine and airframe simulation" that can "make the ECU and even the HMU perform as if they were in an actual aircraft." The closed-loop bench is located at GPECS' headquarters in Connecticut.

With respect to the HMU, McBrine testified that GPECS performed acceptance tests; electrical checks "on the electrical/mechanical components within the HMU;" checks of the valve and throttle input; a vacuum check; closed-loop bench testing; linearity checking; and a PLA signal dropout test. All of these tests were done at GPECS headquarters in the U.S. When GPECS had

6

completed its testing and examination of the ECU and HMU, it shipped the units to Rolls-Royce in Indiana for further testing and inspection.

McBrine stated that GPECS maintains a file on its investigation of the subject accident in Connecticut, and that the custodian of that file is the GPECS Product Support division which is also in Connecticut. GPECS' accident investigation report was authored by GPECS representatives in Connecticut and was drafted in English.

### E.    Other Records and Evidence Relevant to This Case

#### 1.    *Evidence of the Crash and Damages is Partly in Mexico*

Because the crash occurred in Mexico and the DGAC is conducting an investigation, it is likely that important evidence and witnesses relevant to the subject helicopter's crash can be found in Mexico. However, the Defendants have not come forward with any proof that this evidence has been preserved and is available in Mexico. Further, while the present location of any witnesses to the crash is likely to be in Mexico, their current residence, four years after the crash, has not been specifically identified. In short, the availability of any potential evidence in Mexico seems speculative.

It is also apparent that the majority of damages witnesses and documents will be in Mexico. However, Plaintiffs have offered to make themselves available in the United States for deposition and have further agreed to produce all records located in Mexico in the United States. *See In re West Caribbean Crew Members*, 632 F. Supp. 2d 1193, 1203 (S.D. Fla. 2009) ("[M[uch of this [damages] evidence is in Plaintiffs' control and, because Plaintiffs have the greater interest in pursuing the case to conclusion, the court anticipates that Plaintiffs will voluntarily produce much of the damages evidence in the United States.")

#### 2.    *Evidence of Other Bell 407 Helicopter Crashes is in the United States*

Plaintiffs allege that this case centers around the design and manufacture defects inherent in the Bell 407 helicopter, the model of the subject helicopter in this case, and its component parts,

7

particularly the FADEC system. These alleged defects have been the subject of multiple cases here

in the United States, particularly in Florida. These cases include *Nogueira Da Silva v. Bell

Helicopter Textron, Inc., et al.*, Case No. 02-20574-Civ-Altonaga; *Kamal El-Nashar v. Bell

Helicopter*, Case No. 96-3331-CIV-MIDDLEBROOKS; *Horn v. Bell Helicopter*, Case No. 96-

3337-CIV-MIDDLEBROOKS; *Rabello v. Bell Helicopter*, Case No.00-00733-CIV-KING; *De

Lima v. Bell Helicopter*, Case No. 00-01199-CIV-KING; and *Belculfine v. Bell Helicopter*, Case No.

00-00734-CIV-KING. All of these cases were litigated and ultimately resolved in this jurisdiction.

        In their Response to the Defendants' Motion to Dismiss for Forum Non Conveniens,

Plaintiffs have stated in great detail the history of the alleged defects inherent in the Bell 407

helicopter and have further described Bell's and Rolls-Royce's alleged knowledge and concealment

of these defects. Plaintiffs have also filed with the Court a list of approximately fifty depositions

taken in other cases involving Bell 407 helicopters. Plaintiffs have copies of all of these depositions

at their office in Miami, Florida. Plaintiffs assert that this consideration favors allowing their cases

to remain before this Court. Defendants claim that the Court should disregard this argument because

the cases referenced by Plaintiff each had some connection to Florida.

        III.    **ANALYSIS**

            A.    **Forum Non Conveniens Doctrine**

        In *Kinney System, Inc. v. Continental Insurance Co.*, 674 So.2d 86 (Fla. 1996), the Florida

Supreme Court held that a trial court presented with a motion to dismiss on the basis of forum non

conveniens must conduct a four-step analysis, later codified in Florida Rule of Civil Procedure

1.061(a), which provides that:

>            (a) Grounds for Dismissal. An action may be dismissed on the
>            ground that a satisfactory remedy may be more conveniently sought
>            in a jurisdiction other than Florida when:
>
>            (1) the trial court finds that an adequate alternate forum exists which
>            possesses jurisdiction over the whole case, including all of the parties;

(2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;

(3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and

(4) the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.

The decision to grant or deny the motion for dismissal rests in the sound discretion of the trial court, subject to review for abuse of discretion.

A "defendant seeking dismissal on forum non conveniens grounds bears the burden of persuasion as to each *Kinney* factor." *Bridgestone/Firestone North American Tire, LLC v. Garcia*, 991 So.2d 912, 916 (Fla. 4d DCA 2008); *see also Ellis v. AAR Parts Trading, Inc.*, 357 Ill. App. 3d 723 (2005) (in product liability case where airplane crash was in Philippines with Philippine decedents, burden was on defendant to show factors strongly favoring transfer to the Philippines).

The deference ordinarily shown to a plaintiff's forum choice "applies with less force when the plaintiff or real parties in interest are foreign." *Ciba-Geigy Ltd., Basf A.G. v. The Fish Peddler, Inc.*, 691 So.2d 1111, 1118 (Fla. 4th DCA 1997). However, while a foreign plaintiff's choice of forum may be afforded less deference, "less deference" does not mean "no deference." *In re West Caribbean Crew Members*, 632 F. Supp. 2d at 1201 ("less deference" to a foreign plaintiff's choice of forum does not mean "no deference"); *see also Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989) (while a foreign citizen's choice of forum may be entitled to *less* deference than a United States citizen's choice of forum, this is "not an invitation to accord a foreign plaintiff's selection of an American forum choice *no* deference since dismissal for forum non conveniens is the exception rather than the rule" ); *Vivas v. Boeing Co.*, Nos. 1-08-2726, 1-08-2740, 2009 WL 1686539, at *8 (Ill.App. June 15, 2009)("less deference is not the same as *no* deference"). Thus,

9

even though Plaintiffs are foreign citizens, some amount of deference must still be given to their choice of forum.

Significantly for this case, the Florida Supreme Court stated in *Kinney* that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Kinney*, 674 So.2d at 89 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839 (1946). Applying the *Kinney* factors codified in Florida Rule of Civil Procedure 1.061, the Court finds that the Defendants' Motion to Dismiss for Forum Non Conveniens should be denied.

### 1.    *Adequate Alternative Forum*

The first factor the Court must analyze is whether there is an available adequate alternative forum which possesses jurisdiction over the whole case. *See Bridgestone/Firestone North American Tire, LLC v. Garcia*, 991 So.2d at 916. The Parties are apparently in agreement that Mexico is both an adequate and available forum to hear this case. Accordingly, the Court's analysis will focus on the private and public interest factors.

### 2.    *Private Interest Factors*

The Court will consider the following private interests of the Parties: (1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Kinney System*, 674 So.2d at 89.

### a.    Relative ease of access to sources of proof

The relative ease of access to sources of testimonial, documentary and real evidence does not require transfer to Mexico. Defendants claim that evidence regarding the crash and any potential damages are located in Mexico. While it is clear that some evidence is located in Mexico, this is a product liability case and all of the evidence relevant to the design, manufacture and assembly of the aircraft, its engines and the FADEC system is in the United States. Where a product is "developed,

produced and tested" in the U.S., it is "likely that any proof regarding a possible design or manufacturing defect would center around events occurring" in the U.S. *Carlenstolpe v. Merck & Co., Inc.*, 819 F.2d 33, 35 (2d Cir. 1987); *see also In re Air Crash Disaster Near Panembang, Ind.*, No. MDL 1276, 2000 WL 33593202, *2 (W.D. Wash. Jan. 14, 2000) ("it is clear that a significant portion of the evidence related to this theory of liability [regarding the design defect theory] is to be found at the place where the plane was designed, not the place where it crashed"); *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d at 634 ("particularly where the liability evidence predominates in the plaintiff's choice of forum, the court should be quite cautious in disregarding such an essential fact of the ligitation").

Further, as a result of the participation of the American-based Defendants in the investigation of the crash by the Mexican government, a significant portion of the evidence relating to the crash itself is located in the United States. As described above, not only did both Rolls-Royce and Bell send representatives to Mexico to participate in the investigation, but the engine and FADEC system component parts were shipped to the United States so that GPECS and Rolls-Royce could perform additional testing at their facilities. Each of the Defendants also prepared accident investigation reports on the incident and all of these reports were drafted in English and are maintained in the United States.

Plaintiffs have provided the Court with extensive preliminary lists of both liability fact witnesses who reside in the U.S. and documents located in the U.S. that will likely be evidence in the instant case. Defendants have not named a single individual who will serve as a witness in this case, stating only that "crucial third party witnesses" are located in Mexico. Other than maintenance records and air traffic control authority records, Defendants have also failed to identify any documentary evidence that is in Mexico.

Moreover, Mr. Stuntzner testified at his deposition that the pilot of the subject helicopter, Plaintiff Oscar Gerardo Posadas Garcia, received training at Bell's facilities in Fort Worth, Texas.

11

Copies of the pilot's training records are maintained in Mr. Stuntzner's accident investigation file
which is in Texas, and the pilot's instructors are also located there.

Additionally, due to the litigation in this jurisdiction of multiple cases[3] involving the Bell
407, Plaintiffs are already in possession of approximately fifty (50) depositions and thousands of
documents which will serve as liability evidence in this case. According to Plaintiffs' Mexican law
expert, Francisco Serrano, if the cases are dismissed in favor of Mexico, it is unlikely that Plaintiffs
will be able to utilize any of this crucial evidence due to the strict discovery rules followed by
Mexican courts. Mr. Serrano stated in his affidavit that, under Mexican law, only original
documents and notarized documents or ones that have been duly legalized may be admitted into
evidence in Mexican courts. Mr. Serrano also stated that any foreign notarized document must have
an apostille attached to be admissible and that strict procedural requirements must be met to present
photocopies of documents to a Mexican court. The Defendants' Mexican law expert, Manuel Garcia
Pimentel Caraza, agreed that all documents from a foreign country must be apostilled before they
can be used as evidence in a Mexican court. Per Mr. Serrano, these procedures usually require a
presentation of the originals. Typically, the photocopy is taken to a notary, who is required to
request to see the original of the document. Then, upon presentation of the original, the notary can
notarize the photocopy as being a true and correct copy. In a case such as this, where many originals
may not be accessible, many of the photocopies that would be admissible by a United States court
will not be accepted in Mexico. Mr. Serrano asserts that even in cases where the originals exist, the
procedure to get a Mexican court to accept photocopies will be lengthy and expensive. Mr. Caraza
concedes that, in order to be used as evidence, there must be other indicia in relation to the
photocopies which support their authenticty. However, Mr. Caraza asserts that such indicia can

---

[3] *See Nogueira Da Silva v. Bell Helicopter Textron, Inc., et al.*, Case No. 02-20574-Civ-Altonaga;
see also *Kamal El-Nashar v. Bell Helicopter*, Case No. 96-3331-CIV-MIDDLEBROOKS; *Horn v.
Bell Helicopter*, Case No. 96-3337-CIV-MIDDLEBROOKS; *Rabello v. Bell Helicopter*, Case
No. 00-00733-CIV-KING; *De Lima v. Bell Helicopter*, Case No. 00-01199-CIV-KING; and
*Belculfine v. Bell Helicopter*, Case No. 00-00734-CIV-KING.

consist of an "express recognition of the issuance of the original documents to which [the] photocopies of same are reproduced . . ." made by or on behalf of the party who authored them.

All of the documentary evidence in the U.S. pertaining to liability is in English. According to Mr. Serrano, all evidence presented to the Mexican court must be in Spanish. Mr. Serrano stated that after an English document is filed with the Mexican court, it must be translated into Spanish; and that only translations that have been performed by a certified or registered translator are admissible. If any party opposes the validity or accuracy of a translation, that party may file an opposing certified translation. The Mexican judge will then typically appoint an independent translator who will translate the document. This process appears to be time consuming and can also be exorbitantly expensive.

Defendants rightly point out that if the cases remain in the United States, they will incur translation costs because translation into English will be required before any evidence can be admitted. While this is certainly true, it seems to the Court that the volume of U.S.-based evidence relating to liability far outweighs any damages and liability evidence in Mexico. *See Hodson v. A.H. Robins Co.*, 528 F. Supp. 809, 820 (E.D. Va. 1981), *aff'd*, 715 F.2d 142 (4th Cir. 1983) (denying FNC motion in product liability action against American manufacturer where defendants failed to show that the evidence on causation and damages located in England exceeded evidence on liability located in the U.S.). Moreover, any burden on the Defendants seems to be minor compared to the burden on Plaintiffs of acquiring and translating thousands of pages of documents pertaining to advanced avionics technology and pilot training into Spanish. *See, e.g., Friends For All Children, Inc. v. Lockheed Aircraft Corp.*, 717 F.2d 602, 608 (D.C. Cir. 1982) (affirming trial court's denial of defendants' motion to dismiss for FNC, in part, because dismissal would require translating thousands of pages of documents written in English into other languages). Also, the translation of these types of highly technical documents can be unreliable and controversial. *See In re West Caribbean Crew Members*, 632 F. Supp. 2d at 1202.

13

Mr. Serrano also stated that unlike the usual practice prevalent in the United States, a Mexican judge may not allow deposition transcripts taken in the United States to be used at trial in lieu of compelling the physical presence of the witness. Depositions in Mexico must fulfill certain specific requirements and if such requirements are not met, the deposition will not be admissible as evidence at trial. Mr. Serrano avowed that, in Mexico, deposition testimony must be made before the Mexican court that is hearing the case; otherwise such deposition testimony is not valid. Any deposition testimony not made before the Mexican judge that is hearing the case will not be admissible as evidence. With respect to this issue, the Defendants' expert, Mr. Caraza, explains that the parties can submit written queries to the judge who will then issue a letter rogatory request to the judge where the witness is domiciled, accompanied by the parties' questions. The letter rogatory will request that the judge where the witness is domiciled issue subpoenas and execute them. The experts' opinions on this issue appear to the Court to be essentially the same in that both will require that the depositions be redone. Based on these requirements, it appears that Plaintiffs will not be able to utilize any of the numerous depositions already in their possession.

In light of these procedures, Defendants' indication that they "will agree to produce whatever documents [related to design and manufacture] are required by a court in Mexico," while appreciated, is virtually meaningless. *See In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 190 F. Supp. 2d 1125, 1138 (S.D. Ind. 2002) (concluding that "Defendants' offer to make discovery available to foreign Plaintiffs does not establish that there will be meaningful ease of access to the evidence collected"). Not only does this offer do nothing to solve the problem of the exorbitant translation costs that would be incurred, but, most importantly, a large portion of the evidence will not be admissible in a Mexican proceeding.

In sum, it appears that the Parties will have greater access to sources of proof if the cases remain in the United States.

14

     b.     Availability of compulsory process for attendance of unwilling witnesses

With respect to damages witnesses, these witnesses consist chiefly of the Plaintiffs themselves and their friends and families. Plaintiffs have represented that they will make themselves available at a convenient location and time in Florida or Mexico for deposition testimony; that they will similarly coordinate the testimony of other material damages witnesses; and that they will also voluntarily travel to Florida for trial.

Defendants have likewise represented that they will make available in Mexico any witnesses in their possession, custody or control. However, there will surely be former employees with knowledge of the issues raised in Plaintiffs' complaints over whom Defendants will have no control. Accordingly, the Parties are far more likely to be able to secure the appearance of all relevant witnesses if the case is heard in a United States court. Thus, this factor tilts in favor of keeping Plaintiffs' cases in the U.S.

     c.     Cost of obtaining attendance of willing witnesses

The Court finds that the liability witnesses located in the United States greatly outnumber any damages and/or liability witnesses located in Mexico. Plaintiffs have identified for the Court almost thirty (30) of Defendants' representatives, employees and/or agents who participated in the design, manufacture, assembling and/or testing of the subject helicopter, its engine, the FADEC system, and all of these witnesses are located in the U.S. with perhaps a few of Bell's employees residing in Canada. There are also approximately fifty (50) depositions that may be used as evidence in this case. Further, a number of the Defendants' key employees and/or representatives participated in the investigation, and these individuals are also located in the U.S. Defendants have not identified any specific individual who would need to travel from Mexico to the United States to testify. In any event, Plaintiffs have stated that they are willing to cover the costs of travel associated with bringing

these witnesses to the U.S. to testify. Although not significant, this factor weighs in favor of maintaining these actions in the United States.

        d.     Viewing the site of the accident

     When considering access to evidence, a court should also consider the possibility of viewing the premises, if appropriate. However, the "possibility of viewing the accident site is usually less significant in a product liability case," such as the one at bar. *Vivas v. Boeing Co.*, Nos. 1-08-2726, 1-08-2740 (cons.), 2009 WL 1686539, *12 (Ill. App. 2009). Indeed, existing photographs and other demonstrative or documentary evidence will be far more valuable to a jury than a view of the scene. *See, e.g., In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 190 F. Supp. 2d 1125, 1144 (S.D. Ind. 2002) ("courts deciding forum non conveniens motions have found that this factor carries little weight when other media are available"); *Reid-Walen v. Hansen*, 933 F.2d 1390, 1398 (8th Cir. 1990) ("to the extent the parties wish to establish the physical layout of . . . where the accident occurred, they could do so accurately through aerial photographs and other demonstrative evidence or testimony").

     While Defendants claim that the trier of fact will benefit from a familiarity with the accident site, they offer no explanation to the Court of what this alleged benefit is. Nor have they stated why photographs and other demonstrative or documentary evidence is insufficient in offering this same benefit.

     Additionally, given that the accident occurred almost four years ago, it seems highly likely that the accident site will have substantially changed since the accident. *Vivas*, Nos. 1-08-2726, 1-08-2740 (cons.), 2009 WL at *12 (the possibility of viewing the premises is not as significant where the accident site has "substantially changed" since the accident). Defendants have not presented the Court with any evidence that the accident site is in the same condition as it was at the time of the accident. As stated above, it is the "defendant seeking dismissal on forum non conveniens grounds [that] bears the burden of persuasion as to each *Kinney* factor." *Bridgestone/Firestone North*

*American Tire, LLC v. Garcia*, 991 So.2d at 916. Defendants have not carried their burden with respect to this factor and, it follows, of course, that this consideration does not weigh in favor of dismissal.

### 3. *Private Interest Factors Do Not Weigh in Favor of Dismissal*

In sum, after carefully considering the arguments of the Parties, the Court finds that the private interest factors do not weigh in favor of dismissal. The Court concludes that if Plaintiffs' claims against Defendants are permitted to proceed in this Court, the Parties will have greater access to important witnesses and documents and the procurement and presentation of relevant evidence will be less costly and more efficient. Based on this finding, it is not necessary that the Court analyze the public interest factors. Nonetheless, an analysis of the public interest factors also supports a denial of Defendants' Motion to Dismiss.

### 4. *Public Interest Factors*

The public interest factors include: (1) the ability of courts to protect their dockets from causes that lack significant connection to the jurisdiction; (2) the ability of courts to encourage trial of controversies in the localities in which they arise; and (3) the ability of courts to consider their familiarity with governing law when deciding whether or not to retain jurisdiction over a case. *Kinney*, 674 So.2d at 92.

In relation to the public interest factors, Defendants have argued that under Florida state law, the analysis is not whether the U.S. has an interest, but rather whether the State of Florida has an interest.[4/] The Court has asked the Defendants whether they would be willing to transfer to other

---

[4/] In federal cases such as this, where a foreign plaintiff's claim involves the negligent conduct of United States corporations and the center of gravity of the claim lies in the United States, the decisional law holds that, because United States' courts have a strong interest in deterring negligent conduct by United States corporations, the controversy should be resolved in United States courts. *See, e.g., Carlenstolpe*, 819 F.2d at 35 ("the court rightly noted the public interest in having a United States court decide issues concerning possibly tortious conduct occurring in this country"); *McLennan*, 245 F.3d at 425; *R. Maganlal & Co. v. M.G. Chem. Co., Inc.*, 942 F.2d 164, 169 (2d Cir. 1991); *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 48 (3d Cir. 1988); *Friends for All*

jurisdictions in the United States which have a connection to this case (Texas, Connecticut and
Indiana), and the Defendants have refused.  In this context, it does not seem unreasonable to
aggregate all U.S. contacts as the Court would do were this a federal case.  When viewed in this
light, the fact that all Defendants are United States corporations with their principal places of
business in the U.S. makes their assertion that a Florida court is more inconvenient than a Mexican
one even more unusual.

      The strong U.S. interest in this case is further proven by the dominant involvement of the
American defendants in the Mexican investigation of this crash. *Vivas*, Nos. 1-08-2726, 1-08-2740
(cons.), 2009 WL at *14 (finding strong American interest where American defendants participated
in foreign government's investigation of airplane crash).  Representatives from both Bell and Rolls-
Royce traveled to Mexico to assist in the investigation.  The relevant parts recovered from the
subject helicopter – the engine and the FADEC system – were examined and analyzed primarily in
the United States, not Mexico.  These parts were sent to the Defendants' facilities in Indiana and
Connecticut.  It seems disingenuous for Defendants to claim now that the U.S. has little interest in
this tragedy, when they are well aware that U.S. corporations were highly involved in the accident
investigation.

      In any event, even were the Court to consider only Florida's contacts, it is clear that Florida
has an important interest in this case.  Product liability actions are not "localized" cases; they are
cases with international implications. *Vivas*, Nos. 1-08-2726, 1-08-2740 (cons.), 2009 WL at *8.
All Americans, including Floridians, no less than Mexicans, have a strong public interest in the
safety of the Bell 407 helicopter which fly in our skies.  While Mexico certainly has an interest in
protecting the people who travel in its skies and in determining damages for its citizens who are
injured in accidents, the Defendants are all American corporations, and Floridians have an interest

_____

*Children, Inc.*, 717 F.2d at 609-10; *In re: Air Crash Disaster near Palembang, Indon. on Dec.
19, 1997*, No. MDL 1276, 2000 WL at *3.

in ensuring the safety of the products that U.S. corporations build and ship throughout the world,

particularly when those corporations market and sell their products here. *See In re West Caribbean,*

632 F. Supp. 2d at 1204 ("[A]lthough Columbia has a strong interest in adjudicating this lawsuit

because it involves injuries to its citizens, the United States generally has a strong interest in assuring

that United States manufacturers and airlines do not produce defective products or engage in conduct

that endangers users **wherever located**.")(emphasis added).

Finally, Defendants argue that Mexican law will apply to this case, and that this factor weighs

in favor of dismissal. It is far from settled that Mexican law will apply to this case. Florida law

cautions against the knee-jerk choice of *lex loci delicti* that Defendants seemingly advocate.

"[P]articularly in the case of aviation accidents," *lex loci,* as the coincidental place where the

accident occurred, is given even less weight. *Bishop v. Fla. Specialty Paint Co.,* 389 So. 2d 999,

1000 (Fla. 1980). Plaintiffs have brought negligence and product liability claims against United

States Defendants for their negligence in, among other things, designing, manufacturing, assembling,

testing, inspecting and/or marketing the subject helicopter, its engine, FADEC system and all

associated component parts. It is clear that the acts and/or omissions associated with Plaintiffs'

claims occurred here in the United States. The "place of the negligent manufacture or design [is]

paramount to the choice of law." *Fosen v. United Technologies Corp.,* 484 F. Supp. 490, 505 (S.D.

N.Y. 1980). Even if Mexican law were to apply, that is an insufficient reason to dismiss these cases.

The law is settled that the need to apply the law of a foreign jurisdiction, "cannot be accorded

dispositive weight." *In re West Caribbean,* 632 F. Supp. 2d at 1204; *SME Racks,* 382 F.3d at, 1105

& n.11., quoting *Burt v. Isthmus Dev. Co.,* 218 F.2d 353, 357 (5th Cir. 1955). *Accord Boosey &*

*Hawkes Music Publishers, Ltd. v. Walt Disney Co.,* 145 F.3d 481, 492 (2d Cir. 1998); *R. Maganlal*

*& Co. v. M.G. Chemical Co., Inc., supra* at 169.

In regards to the public interest factors, the Court finds that the public interest factors do not

weigh in favor of dismissal.

IV.     **CONCLUSION**

Based on the foregoing, Our analysis of the *Kinney* factors supports Plaintiffs' position that their claims against the Defendants should not be dismissed on the basis of forum non conveniens.

Accordingly, the Court, having reviewed all relevant pleadings and being advised fully in the premises, hereby

**ORDERS and ADJUDGES** as follows:

Defendants Rolls-Royce Corp., Inc., Bell Helicopter Textron, Inc., Simmonds Precision Engine Systems, Inc., and Goodrich Pump & Engine Control Systems, Inc.'s Motion to Dismiss Based Upon Forum Non Conveniens is hereby **DENIED**.

**DONE and ORDERED** in Chambers at Miami-Dade County, Florida, this 26 day of January, 2011.

CIRCUIT JUDGE

Copies furnished to:
All Counsel of Record

Gisela Cardonne Ely

JAN 2 6 2011

Circuit Court Judge

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA ⎫
⎬ SS
COUNTY OF LOS ANGELES ⎭

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Boulevard, 12th Floor, Los Angeles, California 90067-4113.

    I hereby certify that on February 3, 2011, I caused a true and complete copy of the foregoing document(s) described as: **PLAINTIFFS' SUBMISSION OF NEW AUTHORITY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (*FORUM NON CONVENIENS*)** to be filed and served on the interested parties in this action by the Court via Notice of Electronic Filing "NEF" at the addresses indicated on the attached Service List.

*/s/ Linda Stark*
_____
LINDA STARK

---

4

**PLAINTIFFS' SUBMISSION OF NEW AUTHORITY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (*FORUM NON CONVENIENS*)**

## PROOF OF SERVICE LIST

### In Re Air Crash a Madrid, Spain, on August 20, 2008
Case No. 2:10-ml-02135-GAF (Rzx)
MDL No. 2135

| COUNSEL FOR PLAINTIFFS: | |
|---|---|
| David P. Matthews<br>Adam Funk<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>713-522-5250<br>713-222-0066 – facsimile<br>dmatthews@thematthewslawfirm.com<br>afunk@thematthewslawfirm.com | Arthur J. Gonzalez<br>Brent Coon & Associates<br>300 Fannin, Ste 200<br>Houston, TX 77002<br>713-225-1682<br>713-225-1785 – facsimile<br>Art.gonzalez@bcoonlaw.com |
| Michael Gallagher<br>Pam McLemore<br>The Gallagher Law Firm<br>2905 Sackett Street<br>Houston, TX 77098<br>713-222-8080<br>713-222-0066 – facsimile<br>mike@gld-law.com<br>PamM@gld-law.com | Ricardo Martinez-Cid.<br>Steven C. Marks<br>Podhurst Orseck, P.A.<br>25 W. Flagler Street, Ste 800<br>Miami, FL 33130<br>305-358-2800<br>305-358-2382 – facsimile<br>rmcid@podhurst.com<br>smarks@podhurst.com |
| Danny M. Sheena<br>Danny M. Sheena, P.E.<br>1001 Texas Avenue, Ste 240<br>Houston, TX 77002<br>713-224-6509<br>713-225-1560 – facsimile<br>danny@sheenalawfirm.com | Newton B. Schwartz<br>James Stegall<br>Kelly W. Kelly<br>Law Office of Newton B. Schwartz, Sr.<br>1911 Southwest Fwy<br>Houston, TX 77098<br>713-630-0708<br>713-630-0789 – facsimile<br>nbs@nbslawyers.com |
| Michael Olin<br>Michael Olin, P.A.<br>169 E. Flagler Street, Ste 1224<br>Miami, FL 33131<br>305-677-5088<br>305-677-5089 – facsimile<br>molin@olinlaw.com | Michael P. Verna<br>Nathaniel B. Duncan<br>Bowles & Verna, LLP<br>2121 N. California Blvd., Ste 875<br>Walnut Creek, CA 94596<br>925-935-3300<br>925-935-0371 – facsimile<br>Mverna@bowlesverna.com<br>nduncan@bowlesverna.com |

5

PLAINTIFFS' SUBMISSION OF NEW AUTHORITY IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (*FORUM NON CONVENIENS*)

| | |
|---|---|
| Enid Duany-Mendoza<br>Lewis S. Eidson<br>Curt Miner<br>Colson Hicks Eidson<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL 33134<br>305-476-7400<br>305-476-7444 - facsimile<br>enid@colson.com<br>mike@colson.com<br>curt@colson.com | Floyd A. Wisner<br>Wisner Law Firm, P.C.<br>3N780 Trotter Lane<br>St. Charles, Illinois 60175<br>630-513-9434<br>630-513-6287 - facsimile<br>faw@wisner-law.com |
| Andrew T. Trailor, Esq.<br>Brian H. Pollock, Esq.<br>Andrew T. Trailor, P.A.<br>8603 South Dixie Highway, Suite 303<br>Miami, FL 33143<br>305-668-6090<br>305-668-6225 - facsimile<br>andrewtrailer@attlawpa.com<br>brian@attlawpa.com | Edward A. Wallace, Esq.<br>Mark R. Miller, Esq.<br>Wexler Wallace LLP<br>55 West Monroe Street, Suite 3300<br>Chicago, Illinois 60603<br>312-346-2222<br>312-346-0022 - facsimile<br>eaw@wexlerwallace.com<br>mrm@wexlerwallace.com |

**COUNSEL FOR DEFENDANTS:**

| | |
|---|---|
| Jeffrey W. Morof<br>James C. Pettis<br>Bryan Cave LLP<br>120 Broadway, Suite 300<br>Santa Monica, CA 90401<br>310-576-2100<br>310-576-2200 -facsimile<br>jwmorof@bryancave.com<br>james.pettis@bryancave.com<br><br>Attorneys for Defendants, *The Boeing Company and McDonnell Douglas Corp.* | Douglas E. Winter<br>Bryan Cave LLP<br>1155 F Street, N.W.<br>Washington D.C.  20004<br>202-508-6072<br>202-508-6200 - facsimile<br>dewinter@bryancave.com<br><br>Attorneys for Defendants, *The Boeing Company and McDonnell Douglas Corp.* |
| J. Denny Shupe, Esq.<br>Schnader Harrison Segal & Lewis LLP<br>1600 Market Street, Suite 3600<br>Philadelphia, PA 19103-7286<br>215-751-2000<br>215-751-2205 - facsimile<br>dshupe@schnader.com<br><br>Attorneys for Defendants *Esterline Technologies Corp. and Leach International* | Leo J. Murphy<br>Schnader Harrison Segal & Lewis, LLP<br>One Montgomery Street, Ste 2200<br>San Francisco, CA 94104<br>415-364-6700<br>415-364-6785 - facsimile<br>lmurphy@schnader.com<br><br>Attorneys for Defendant, *Leach International Corporation* |

6

**PLAINTIFFS' SUBMISSION OF NEW AUTHORITY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (*FORUM NON CONVENIENS*)**

| | |
|---|---|
| Daniel K. Cray<br>Cray Huber Horstman<br> Heil & Vanausdal, LLC<br>303 W. Madison Street, Ste 2200<br>Chicago, IL 60606<br>312-332-8450<br>312-332-8451 – facsimile<br>dkc@crayhuber.com<br><br>Attorneys for Defendant, *Ametek, Inc.* | Jonathan M. Stern, Esq.<br>Schnader Harrison Segal & Lewis LLP<br>The Victor Building<br>750 9th Street, N.W., Suite 550<br>Washington, D.C. 20001-4534<br>202-419-4202<br>202-419-4252 - facsimile<br>jstern@schnader.com<br><br>Attorneys for Defendants, *Esterline Technologies*<br>*and Leach International Corporation* |
| Frank J. Chiarchiaro<br>Jason L. Vincent<br>Fitzpatrick & Hunt, Collier,<br>Pagano, Aubert, LLP, Tower 49<br>12 East 49th Street, 31st Flr.<br>New York, N.Y. 10022<br>Frank J. Chiarchiaro: 212-937-4010<br>Jason L. Vincent: 212-937-4073<br>212-261-8750 - facsimile<br>frank.chiarchiaro@fitzhunt.com<br>jason.vincent@fitzhunt.com<br><br>Attorneys for Defendant, *Ametek, Inc.* | Suzanne McNulty<br>Nicholas Weiss<br>Fitzgerald & Hunt, Collier,<br>Pagano, Aubert, LLP,<br>633 W. 5th Street, 60th Flr.<br>Los Angeles, CA 90071<br>Suzanne McNulty: 213-873-2126<br>Suzanne.mcnulty@fitzhunt.com<br>Nicholas Weiss: 213-873-2133<br>Nicholas.weiss@fitzhunt.com<br><br>Attorneys for Defendant, *Ametek, Inc.* |
| Alan Collier<br>Aghvani Kasparian<br>Stephanie Brie<br>Fitzpatrick & Hunt, Collier,<br>Pagano, Aubert, LLP<br>633 W. 5th Street, 60th Flr.<br>Los Angeles, CA 90071<br>Alan Collier: 213-873-2121<br>Alan.collier@fitzhunt.com<br>Aghvani V. Kasparian: 213-873-2138<br>Aghavni.kasparian@fitzhunt.com<br>Stephanie Brie: 213-873-2139<br>Stephanie.brie@fitzhunt.com<br><br>Attorneys for Defendant, *Eaton Corporation* | James W. Huston<br>Kimberly R. Gosling<br>Morrison & Foerster<br>12531 High Bluff Drive, Ste 100<br>San Diego, CA 92130<br>858-720-5100<br>858-720-5125 - facsimile<br>jhuston@mofo.com<br>KGosling@mofo.com<br><br>Attorneys for Defendant, *Honeywell International, Inc.* |
| Austin W. Bartlett<br>John M. Kelly<br>Michael Gerard McQuillen<br>Adler Murphy & McQuillen, LLP<br>1 N. LaSalle Street, Ste 2300<br>Chicago, IL 60602<br>312-345-0700<br>312-345-9860 - facsimile<br>abartlett@amm-law.com<br>jkelly@amm-law.com<br>mmcquillen@amm-law.com<br><br>Attorneys for Defendant, *Honeywell International, Inc.* | Richard M. Dunn<br>Cozen O'Connor<br>Wachovia Financial Center<br>200 South Biscayne Blvd, Ste 4410<br>Miami, FL 33131-2303<br>305-704-5950<br>305-704-5955 - facsimile<br>rdunn@cozen.com<br><br>Attorneys for Defendant, *Ametek, Inc.* |

7

**PLAINTIFFS' SUBMISSION OF NEW AUTHORITY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (*FORUM NON CONVENIENS*)**